**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JORGE LOPEZ-LOPEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, NORTHEAST OHIO CORRECTIONAL CENTER, ET AL.,<br><br>Respondents, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 4:26-CV-01691-DCN<br><br>DISTRICT JUDGE DONALD C. NUGENT<br><br>MAGISTRATE JUDGE<br>REUBEN J. SHEPERD<br><br>**REPORT AND RECOMMENDATION** |

## I. Introduction and Procedural History

On July 21, 2026, Petitioner Jorge Lopez-Lopez ("Lopez-Lopez") filed an application for a writ of habeas corpus under 28 U.S.C. § 2241, stating that his Due Process rights have been violated and he has been subject to unlawful immigration detention for over nine months, despite being granted withholding of removal. (ECF Doc. 1). On August 3, 2026, the matter was referred to me to issue "any order requiring the respondent to answer, service of the petition, or any appropriate order directed to this matter" and for preparation of a Report and Recommendation. (ECF Doc. 5). Pursuant to 28 U.S.C. § 2243 and this Court's referral order, I then ordered Respondents to respond, (ECF Doc. 6), which they did on August 6, 2026. (ECF Doc. 7).

Lopez-Lopez then filed an amended petition on August 21, 2026, (ECF Doc. 11), to which Respondents filed a return of writ on August 25, 2026. (ECF Doc. 12). I then held a hearing and was informed that Lopez-Lopez has been released from confinement but remains under supervision. (Non-document entry of Sept. 9, 2026). The matter is therefore fully ripe.

## II. Factual Background[1]

Lopez-Lopez is a citizen of Nicaragua, who was previously ordered removed on January 6, 2006. (ECF Doc. 11, p. 2). On his return to Nicaragua, he became a political prisoner and was jailed and tortured by the Nicaraguan government for protesting against the Ortega regime. (*Id.*). He was released, fled to the United States with his family, and reentered at the southern border on June 13, 2019. (*Id.*). He reported his fear of returning to Nicaragua to immigration authorities, who issued a Notice of Intent to Reinstate Removal, and released him on an Order of Supervision. (*Id.*). Lopez-Lopez asserts he was compliant with check-ins and other requirements of his Order of Supervision for six years until he was detained on October 22, 2025 during a routine check-in. (*Id.*).

Because Lopez-Lopez was previously ordered removed, he was placed in reinstatement proceedings (or, withholding-only proceedings) and given a reasonable fear interview due to his stated fear of returning to Nicaragua. (*Id.* at p. 3). On May 28, 2026, an Immigration Judge ("IJ") granted Lopez-Lopez Withholding of Removal pursuant to 8 U.S.C. § 1231(b)(3), meaning that he cannot now be removed to Nicaragua. (*Id.*).

In July 2026, Lopez-Lopez was informed that he would be removed to Mexico, a "third country" to which he also asserts fear of persecution if removed there. (*Id.*). He was not given another credible fear interview. (*Id.*). He was transported to Port Isabel, Texas for removal to Mexico, but refused to board the plane. (*Id.*). Some time after filing the present petition, Lopez-

[1] At this stage of proceedings, allegations in the Petition are accepted as true and construed in Petitioner's favor. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (describing the pleadings standard and applying to the § 2243 stage in a § 2241 petition). In addition, "documents attached to the pleadings become part of the pleadings and may be considered" without converting to summary judgment. *Id.*, quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

Lopez was released from custody and remains under supervision.[2] (Non-document entry of Sept. 9, 2026).

## III. Legal Standard

The Constitution guarantees that, absent suspension, the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), citing U.S. Const..., Art. I, § 9, cl. 2. Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The writ is established to ensure that the government "does not detain individuals except in accordance with law" and permits all persons to challenge the lawfulness of their confinement, regardless of status. *Hamdi*, 542 U.S. at 525.

Federal district courts are limited in their relief under Section 2241 when considering immigration cases. *See, e.g.*, *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding a district court lacks jurisdiction to consider removal orders); *see also* 8 U.S.C. § 1252(g) (giving the Attorney General of the United States exclusive jurisdiction over removal proceedings). This Court may not grant habeas relief as to the underlying immigration question, *i.e.*, a removal question. *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g)" for challenges regarding the legality of removal orders). However, the district court may review whether an alien is lawfully detained; the Attorney General's immigration authority[3] does not abrogate Section 2241's authority to

[2] Because Lopez-Lopez remains on supervised release, his habeas petition is not necessarily moot. *See Hargrove v. Healy*, 155 F.4th 530, 531 (6th Cir. 2025).

[3] Although authority is statutorily vested in the Attorney General, immigration enforcement, and administration functions were transferred to the Secretary of Homeland Security by the Homeland Security Act of 2002. Pub. L. No. 107-296, 116 Stat. 2135 (2002). However, the Attorney General's discretionary detention authority under § 1226(a), delegated to immigration judges, "is shared with [DHS] because officials of that department make the

grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody). To that end, this Court may still interpret immigration statutes applied against a petitioner to discern whether the detention is lawful or not. *See id.*

## IV. Discussion

In Lopez-Lopez's amended petition, he asserts his detention is unlawful because he has been deprived of substantive due process where his order of supervision was revoked and where the United States has attempted to remove him to Mexico without first determining if he will be subject to torture there. (ECF Doc. 11, Pet., ¶¶ 67-79). He argues his detention extends beyond what is reasonable under either 8 U.S.C. § 1231(a) or *Zadvydas v. Davis*, 533 U.S. 678 (2001) because his removal was not reasonably foreseeable. (*Id.* ¶¶ 76-78, 86-87). This government policy to revoke his order of supervision, detain him, and attempt to remove him to a third country without notice and a meaningful opportunity to respond violates his procedural due process rights. (*Id.* ¶¶ 80-85). He further argues that he is a putative member of the nationwide class in *D.V.D. v. D.H.S.*, 778 F. Supp. 3d 355, 378 (D. Mass 2025), and as such, is entitled to meaningful notice and an opportunity to contest removal to a third country. (*Id.* ¶¶ 88-91). Lopez-Lopez asserts the government's policy and attempts to remove him to a third country are unlawful, and violate the Convention against Torture ("CAT") and the Foreign Affairs Reform Restructuring Act ("FARRA") Pub. L. 105-277 Div. G, Title XXII, § 2242(a), 112 Stat. 2681, 2681–822 (1999). (*Id.* ¶¶ 92-95). He also alleges that Respondents' actions violate the Administrative Procedure Act, 5 U.S.C. § 706, and that the DHS policy revoking his order of

---

initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

supervision should be set aside as a violation of the *Accardi* doctrine, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). (*Id.* ¶¶ 96-133).

**A. To the extent that Lopez-Lopez challenges his removal to a third country, this Court is without jurisdiction.**

I first address Respondents' argument that this Court is without jurisdiction to determine Lopez-Lopez's habeas corpus petition under 8 U.S.C. § 1252(g), which bars jurisdiction over claims "'arising from'" the Secretary of Homeland Security's decision to "'execute removal orders.'" (*Id.* at p. 6 (quoting 8 U.S.C. § 1252(g))). (ECF Doc. 12, pp. 6-7). Lopez-Lopez states that he "is not seeking review of a final order of removal." (ECF Doc. 11, ¶ 4).

It is true that a district court sitting in habeas review may consider an immigrant petitioner's claims without disturbing a final order of removal. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir. 2003) (describing that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") did not bar the district courts of jurisdiction to consider habeas petitions); *see also Zadvydas*, 533 U.S. at 688 (same). Federal district courts may consider a habeas petition under 28 U.S.C. § 2241 and determine the lawfulness of their custody without running afoul of Section 1252(g)'s jurisdictional bar. The Sixth Circuit interprets 1252(g) "as referring to executable removal orders—that is, existing and enforceable removal orders subject to execution." *Enriquez-Perdomo,* 54 F.4th at 863. Thus, Section 1252(g) does not prevent a district court's review where the detention is not premised on the enforcement of a final order of removal. As applied in the Sixth Circuit, the jurisdictional bar in Section 1252(g) does not abrogate Section 2241's authority to grant the writ where the immigrant's detention was unlawful. *See, e.g.*, *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022); *see also Thuraissigiam*, 591 U.S. at 117.

However, Lopez-Lopez's statement that "he is not seeking review of a final order of removal," (ECF Doc. 11, ¶ 4), does not necessarily respond to whether this Court has jurisdiction to consider the claims he raises in his habeas petition. This Court does not have jurisdiction over the petitioner's underlying immigration case and it cannot decide whether or not to detain under an immigration statute. *See, e.g.*, *Hamama*, 912 F.3d at 876 *and Hamama v. Adducci*, 946 F.3d 875, 877 (6th Cir. 2020) ("*Hamama II*"). Judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States" is not available in federal habeas review. 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that a petition for review must be filed with the appropriate court of appeals as the "sole and exclusive means for judicial review of an order of removal."

The IIRIRA authorizes noncitizens to obtain direct "review of a final order of removal" in a court of appeals. 8 U.S.C. § 1252(a)(1). It provides for expedited judicial review of final orders of removal by "consolidating" the alien's "various challenges arising from the removal proceedings" in a petition for review by the courts of appeals and "eliminating review in the district courts." *Nasrallah*, 590 U.S. at 580 (internal quotations and marks omitted). Thus the "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review" under Section 1252(b)(9)'s direct review consolidation provisions. *Nasrallah*, 590 U.S. at 582. Orders that do not affect the validity of the final order of removal do not merge into the final order of removal and are therefore not subject to 1252(b)(9)'s limitations. *Nasrallah*, 590 U.S. at 582 (applying to Convention Against Torture orders).

Lopez-Lopez's assertion that this court has jurisdiction because he is not seeking review of a final order of removal, (ECF Doc. 11, ¶ 4), misses the mark. A "final order of removal" is a

"final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). Federal courts have no jurisdiction to consider the decision to "execute removal orders." 8 U.S.C. 1252(g) (emphasis added). Federal district courts only have jurisdiction to "review immigration-related detentions to determine if they comport with the demands of the Constitution." *Singh v. Attorney Gen.*, No. 4:26-CV-02611, 2026 WL 3263065, at *2 (N.D. Ohio Oct. 30, 2026) (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900-01 (D. Minn. 2020) (*citing Zadvydas*, 553 U.S. at 688)). Much of what Lopez-Lopez seeks in his habeas petition relates to the execution of the final order of removal, even if he does not challenge whether the United States has the authority to remove him. (*See generally* ECF Doc. 11). This Court is thus without jurisdiction to consider any claim related to a final order of removal, which must be brought before the Sixth Circuit, nor does it have jurisdiction to review the execution of Lopez-Lopez's removal to a third country. 8 U.S.C. §§ 1252(b)(9), (g).

I therefore recommend that the District Court decline to exercise jurisdiction over those claims related to Lopez-Lopez's final order of removal and the execution thereof. I recommend the District Court exercise jurisdiction pursuant to Section 2241 for the limited purpose of considering whether his detention is lawful.

**B. To the extent that Lopez-Lopez asserts his removal to a third country violates the Convention against Torture, this Court is without jurisdiction.**

Notwithstanding the above, Lopez-Lopez also asserts that Respondents' attempts to remove him to a third country without providing meaningful notice and an opportunity to access protections against removal to a country where he is more likely than not to face torture is a violation of FARRA and CAT regulations, and the policy is likewise against the INA and the Administrative Procedure Act ("APA"). (ECF Doc. 1, ¶¶ 88-119). He, therefore, has the right

under the *Accardi* doctrine to set this Agency action aside. (*Id.*, ¶ 120-23). He requests that he be permitted a reasonable fear interview, request further withholding of removal and/or CAT protection before an IJ, and seek review of an adverse determination before removal to a third country. (*Id.* ¶¶ 130-31).

Respondents, for their part, state that Lopez-Lopez's removal to a third country is authorized under 8 U.S.C. § 1231(b), which allows that a person may be removed to "any other 'country whose government will accept the alien into that country,'" even if the person otherwise has no ties there. (ECF Doc. 12, p. 7 (quoting 8 U.S.C. § 1231(b)(2)(E)(vii))). Respondents present that removing Lopez-Lopez to Mexico does not violate the United States' obligations under Article Three of the CAT. (*Id.* at p. 8, (citing CAT, *adopted* Dec. 10, 1984, S. Treaty, Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85)).

Despite the parties' arguments on the merits,[4] this Court cannot reach this issue. Courts "'have an independent obligation to assure ourselves of our own jurisdiction,' which means we must sometimes 'raise and decide jurisdictional questions that the parties either overlook or elect not to press.'" *Castro-Fuentes v. Blanche*, No. 25-3407, 2026 WL 3216568, at *2 (6th Cir. Oct. 27, 2026) (quoting *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 759 (6th Cir. 2024) and *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

District courts are without jurisdiction to consider claims under the United Nations Convention. 8 U.S.C. § 1252(a)(4). The court of appeals is "the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment." *Id.* And even then, the

[4] I note that Respondents raise this Court's lack of jurisdiction on other grounds, (*see* ECF Doc. 12, pp. 6-7), as addressed in subsection A, *supra*. Respondents do not raise this Court's lack of jurisdiction under Section 1252(a)(4).

Sixth Circuit has recently held that CAT claims do not provide an independent basis for its jurisdiction. *Castro-Fuentes*, 2026 WL 3216568, at *3 (quoting *Riley v. Bondi*, 606 U.S. 259, 268 (2025)). Rather, the Sixth Circuit has held that the controlling Supreme Court precedent found in *Riley* results in significant changes in its judicial-review process. *Id.* at *3-5. For the Sixth Circuit to consider Lopez-Lopez's claims regarding his withholding-only proceedings and related CAT claims, they must merge into his final order of removal. *Id.* at *3 ("the question becomes whether [petitioner]'s CAT and withholding claims merged into his final order of removal, thus allowing judicial review of his claims here.") But Lopez-Lopez makes no claims regarding his final order of removal in this petition. (ECF Doc. 11, ¶ 4). And even if he did, this Court lacks jurisdiction to consider them regardless.

Therefore, I recommend the District Court decline to exercise jurisdiction over any claims related to Lopez-Lopez's withholding of removal or CAT claims.

**C. To the extent that Lopez-Lopez asserts entitlement to relief as a member of the *D.V.D.* class, it is unavailable in habeas corpus.**

Many of Lopez-Lopez's claims relate to the nationwide class action in *D.V.D. v. DHS*, which challenges the DHS practice of deporting noncitizens with final orders of removal to third countries without notice or the opportunity to raise a fear-based claim regarding removal to that third country. (*Id.* ¶¶ 52-66; 88-95; *see also D.V.D.*, 778 F. Supp. 3d at 378).

But even if Lopez-Lopez is a member of the putative class in *D.V.D.*, a habeas corpus petition is almost certainly the wrong vehicle for this assertion. *See Hamama v. Adducci*, 912 F.3d 869, 875 (6th Cir. 2018) (describing that habeas is barred as to class-wide injunctive relief); *cf. Jennings v. Rodriguez*, 583 U.S. 281, 324 (2018) (Thomas, J., concurring in part and concurring in the judgment) (describing that, particularly in the immigration context, a class action suit seeking declaratory and injunctive relief "is not a habeas petition" and does not

implicate the writ). The nature of the relief he seeks as a putative member of the *D.V.D.* class indicates that habeas is not the appropriate mechanism for this claim. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases"). The writ is available to remedy a petitioner's unlawful confinement. *Id.* But habeas relief, at its core, is limited to release from custody. *See, e.g.*, *Munaf*, 553 U.S. at 693; *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (same). A district court reviewing a Section 2241 petition "does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress." *Wilson*, 961 F.3d at 838.

In his petition, Lopez-Lopez states that he satisfies the requirements of *D.V.D.* class membership, that the rationale from that case applies here, and that the case is persuasive authority and will be binding once that court's decision takes effect. (ECF Doc. 11, ¶¶ 65-66). As a result, he requests relief including an order that Respondents:

1. "provide . . . access to his statutory rights to protection and due process of law prior to any third country removal";

2. "provide written notice . . . in a language that he understands and that Respondents may not effect removal for at least fifteen days to allow Petitioner a meaningful opportunity to investigate and contest removal to the newly designated third country";

3. Should he express a fear of removal to that third country, "reissue [his] § 1231(a)(5) order and must provide him with a reasonable fear interview in which an asylum officer shall ascertain whether there is a 'reasonable possibility' he could establish a likelihood of persecution or torture, seek review of any adverse determination, and/or present his full application for withholding of removal and/or CAT protection to an immigration judge, consistent with 8 C.F.R. § 208.31"; and

4. "notify [his] counsel with sufficient advance notice of the date and time [of the reasonable fear interview], and permit Petitioner to have his Counsel present telephonically during the interview[.]"

(*Id.* ¶¶ 127-31). None of this relief is directed to his release from custody. Therefore, to the extent that Lopez-Lopez seeks the type of injunctive relief described in *D.V.D.*, it is unavailable in a habeas corpus petition.

Setting the habeas presentation question aside, *D.V.D.*'s history itself provides that injunctive relief is not available for Lopez-Lopez. On September 29, 2026, the Supreme Court found that the *D.V.D.* plaintiffs were not entitled to an injunction pending its review, its third similar order overruling lower courts' attempts to halt DHS's third country removal policy. *See Dep't of Homeland Sec. v. D.V.D.,* No. 26-426, 2026 WL 2917860, at *1 (U.S. Sept. 29, 2026); *see also Ojukwu v. Lyons*, No. 26-3891, 2026 WL 3032742, at *3 (6th Cir. Oct. 9, 2026). Because the Supreme Court has determined that injunctive relief is unavailable to the *D.V.D.* plaintiffs, this Court cannot reach a different result. *Id.*

Further, as the Sixth Circuit has warned, the class certification in *D.V.D.* "has serious consequences for absent class members," including those "who may not even have the 'opportunity' 'to opt out' of the class." *Ojukwu*, 2026 WL 3032742, at *3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). If the district court certifies the class under Rule 23(b)(2) but the claim fails on the merits, the failed class claim binds all members. *Ojukwu*, 2026 WL 3032742, at *3 (internal quotations and marks omitted). And to the extent that Lopez-Lopez attempts to use *D.V.D.*'s reasoning as the basis for an individual claim, this also fails. *Ojukwu*, 2026 WL 3032742, at *4 (describing that, even though class claims do not necessarily bar individual claims, the court's certification order in *D.V.D.* rests on the type of generalized 'policy or practice' class claim that precludes individual claims).

For all of these reasons, injunctive relief premised on *D.V.D.*'s reasoning, class inclusion, or individual claims is unavailable to Lopez-Lopez in habeas. I recommend dismissal of these claims for relief.

Related to his claims regarding the *D.V.D.* class, but raised separately, Lopez-Lopez claims that Respondents' actions to remove him to a third country without meaningful notice or opportunity to seek protection under 8 U.S.C. § 1231(b)(3), FARRA, and CAT, violate their mandates, the INA, as well as his Fifth Amendment substantive due process rights. (ECF Doc. 11, ¶¶ 67-79; 92-119).

Respondents counter that, in Lopez-Lopez's case, his withholding of removal was granted with respect to Nicaragua only; it does not prevent him from being removed to Mexico as a valid third country for removal under Section 1231(b)'s catch-all provisions. (ECF Doc. 12, p. 8). Respondents provide that Lopez-Lopez's removal to Mexico is done under a valid international agreement between the two countries and in accordance with FARRA and CAT. (*Id.* at pp. 8-9). Respondents also note March 2025 policy guidance includes notice to the individual and an opportunity to receive a fear screening as to the third country for removal. (*Id.* at p. 9).

Even if not specifically raised by the parties,[5] the Court must satisfy itself that it has jurisdiction to hear the claims before it.

**D. This Court has jurisdiction only to consider Lopez-Lopez's claims that his detention after a final order is unlawful, and that claim has since been mooted.**

Notwithstanding the above discussion regarding the Sixth Circuit's jurisdiction to review final orders of removal, a petitioner challenging their detention must do so in the district court in

[5] Respondents raise jurisdictional defenses under other provisions of Section 1252, but do not specifically raise the jurisdictional bar found at 8 U.S.C. 1252(a)(4). (*See* ECF Doc. 12, pp. 6-7).

the first instance. *See Perez v. Bondi*, 160 F.4th 710, 713 n.1 (6th Cir. 2025). The Sixth Circuit is without jurisdiction to consider challenges to an immigrant's detention even where a challenge to their removal is pending before it. *Id.* ("while [Petitioner's] request for an emergency stay of removal . . . was pending with our court . . . our court denied [Petitioner]'s emergency motion for release from detention, finding that first-instance review of his challenge to detention lies within the district court's jurisdiction, not the court of appeals.").

This Court is vested with the power to issue the writ for all persons, including non-citizens, who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Lopez-Lopez may only challenge the legality of his confinement itself, a matter which this Court has jurisdiction to decide. *Dornveil v. Noem*, No. 4:25-CV-1809, 2025 WL 2720786, at *3 (N.D. Ohio Sept. 24, 2025) (exercising jurisdiction over detention-based claims because they did not challenge the petitioner's removal proceedings).

I therefore turn only to whether Lopez-Lopez's detention pending the execution of his removal was lawful. Once an immigrant is ordered removed, DHS must turn to the task of executing that removal and "physically remove" them from the United States. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021). According to statute, this physical removal must be completed within a 90-day "removal period" after the latest of: "(1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." *Id.* (quoting 8 U.S.C. § 1231(a)(1)(B)). Detention is mandatory during this 90-day period. *Id.* (citing 8 U.S.C. § 1231(a)(2). However, the detention may be extended beyond the 90-day removal period if the immigrant acts to prevent their removal, § 1231(a)(1)(C); DHS may stay removal if it determines such removal is not practicable or proper, § 1231(c)(2)(A); and the

immigrant may be detained or released under supervision if they are "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Guzman Chavez*, 594 U.S. at 529 (citing 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4 (setting out procedures DHS must follow to impose continued detention)).

The statute does not specifically limit how long a person may be detained once the 90-day removal period has been extended. *Id.* However, in *Zadvydas*, the Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," and held that a person may be detained only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. According to *Zadvydas*, six months is presumptively reasonable. *Id.* at 701. After six months, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689).

Pending withholding of removal proceedings do not change this calculus, nor does the granting of withholding of removal. *See id.* at 533-47 (providing a thorough analysis of Section 1231's statutory text where an individual has pending withholding proceedings). Effecting the removal of a person after a final order can operate independently from withholding proceedings, which do not prevent removal to a third country. *Id.* at 535-36. And the feasibility of removal to a third country if withholding of removal is granted does not itself make detention pending removal unlawful. *Id.* at 537.

Furthermore, the constitutional concern in *Zadvydas* relates to the unreasonableness of continued detention. *See Zadvydas*, 533 U.S. at 700. A court finding that continued detention

beyond the removal period is no longer authorized by statute does not result in release without conditions. *Id.* Rather, “the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.” *Id.* Section 1231 describes the same: “If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.” 8 U.S.C. § 1231(a)(3).

The question before the Court thus narrows – has Lopez-Lopez been detained past the period authorized by statute and *Zadvydas* while the United States acts to remove him, and can habeas relief provide remedy?

Here, Lopez-Lopez was subject to the reinstated final order of removal dated January 6, 2006. (ECF Docs. 7-2, 7-5). On June 15, 2019, he was issued a Notice of Intent/Decision to Reinstate prior order of removal and was released on an order of supervision on June 16, 2019. (ECF Doc. 7-3, ¶ 10). On October 22, 2025, his order of supervision was terminated, and he was taken into custody. (*Id.* ¶ 11). He was referred for withholding only proceedings, was granted withholding of removal, and the IJ’s decision became administratively final on June 29, 2026. (*Id.* ¶ 14; *see also* ECF Doc. 7-8). The United States began the third country removal process and attempted to remove Lopez-Lopez to Mexico on June 18, 2026, which he refused and was returned to detention. (ECF Docs. 12-1, 12-2). As of September 9, 2026, Lopez-Lopez was released from detention and remains under supervision. (Non-document entry of Sept. 9, 2026).

Because the final order of removal operates independently of the withholding proceedings, *see Guzman Chavez*, 594 U.S. at 535-36, the post-removal detention period began running on October 22, 2025, when his order of supervision was revoked. But even though his

continued detention may have become presumptively unreasonable under *Zadvydas* six months later, he has since received the type of relief available to him in habeas. This Court has the authority to grant release from confinement as a core remedy in habeas corpus. *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). But this relief is limited. "A district court reviewing a claim under § 2241 does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress." *Id.* Therefore, because he has been released from confinement and is now under supervision, this Court can do no better for him. His petition is therefore moot.

I therefore recommend the District Court dismiss the petition as moot.

## V. Recommendation[6]

I recommend that the District Court decline to exercise jurisdiction over the petition for any claim related to the execution of a final order of removal or the Convention against Torture. I also recommend that the District Court dismiss the claims related to inclusion in the *D.V.D.* class or relief premised on that case as unavailable in federal habeas. I also recommend that the District Court only exercise jurisdiction to consider the lawfulness of Lopez-Lopez's detention, and to dismiss that claim as now moot.

Dated: November 10, 2026

Reuben J. Sheperd
United States Magistrate Judge

[6] A certificate of appealability is not required to appeal the denial of a habeas petition filed under 28 U.S.C. § 2241. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). On this basis, I make no recommendation as to whether a certificate of appealability should issue.

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).